UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

ADLIFE MARKETING &
COMMUNICATIONS CO., INC.,

            Plaintiff,

    v.

SANDER BROTHERS OF NEW YORK,
INC.,

            Defendant.

_____

                        19-CV-886-LJV
                        DECISION & ORDER

      On July 3, 2019, the plaintiff, Adlife Marketing & Communications Company, Inc.,

("Adlife"), filed a complaint alleging violations of the Copyright Act, 17 U.S.C. §§ 106,

501.  Docket Item 1.  Before this Court is Adlife's motion for a default judgment, Docket

Item 13.  For the following reasons, the Court grants the motion in part.

## **BACKGROUND**

      "Adlife is an advertising agency specializing in design digital marketing, print

advertising[,] and photography."[1]  Docket Item 1 at ¶ 5.  Adlife holds the copyright to the

following four photographs of food products: (1) BeefChuckSteakBnIsGrlMrk001 (the

"beef chuck steak photo"), United States Copyright Office, Registration Number VA 2-

_____

      [1] On a motion for a default judgment, the court accepts as true the complaint's
factual allegations, except those relating to damages, and draws all reasonable
inferences in the moving party's favor.  *See Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d
Cir. 2009).

009-665; (2) Blueberry003_ADL (the "blueberries photo"), United States Copyright Office, Registration Number VA 2-047-017; (3) ChickenLeg019_ADL (the "chicken legs photo"), United States Copyright Office, Registration Number VA 2-046-591; and (4) PorkSausageItalianRope001_ADL (the "pork sausage photo"), United States Copyright Office, Registration Number VA 2-046-789 (together, "the photographs"). *Id.* at ¶ 8; *see also* Docket Items 1-1, 1-2. The defendant, Sander Brothers of New York, Inc., ("Sander Brothers"), used the photographs in its weekly advertisements for food products without first acquiring a license or permission from Adlife. Docket Item 1 at ¶¶ 9-10.

On July 3, 2019, Adlife commenced this action. *See id.* On December 18, 2019, Adlife filed an affidavit of service, attesting that Sander Brothers had been served the previous day. Docket Item 7. Sander Brothers failed to appear and defend this action, and after the time to do so expired, Adlife asked the Clerk of the Court to enter a default. Docket Item 10. That default was entered on August 5, 2020. Docket Item 11.

On September 1, 2020, Adlife moved for a default judgment, seeking $20,000 in statutory damages and $818 in attorney's fees and costs. Docket Item 13. On October 22, 2020, this Court ordered Sander Brothers to show cause, within thirty days, why the motion for a default judgment should not be granted. Docket Item 16. Sander Brothers did not respond to that order or the motion for a default judgment, and the time to do so now has expired.

**LEGAL PRINCIPLES**

I.      **DEFAULT JUDGMENT**

Federal Rule of Civil Procedure 55 addresses defaults and default judgments. *See generally Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993).  "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  Fed. R. Civ. P. 55(a).  If, as here, the plaintiff seeks a judgment for an amount other than a "sum certain," she then must "apply to the court for a default judgment."  Fed. R. Civ. P. 55(b).  That determination requires a multi-pronged analysis of: (1) liability, (2) equitable considerations, and (3) damages.  *See Randle v. AC Asset Servs. LLC*, 2020 WL 5757187, at *1 (W.D.N.Y. Sept. 28, 2020).  The Clerk of the Court previously entered a default against Sander Brothers, Docket Item 11, so the Court proceeds to the Rule 55(b) considerations.

When the Clerk of the Court has entered a default, that "does not mean that a default judgment is automatically warranted."  *Farrington v.  Fingerlakes1.com, Inc.*, 2020 WL 7350336, at *2 (W.D.N.Y. Dec. 15, 2020) (citing *Bricklayers & Allied Craftworkers Loc. 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 187 (2d Cir. 2015)).  To determine whether to enter a default judgment, courts first decide whether "liability is established as a matter of law when the factual allegations of the complaint are taken as true."  *Bricklayers*, 779 F.3d at 187 (citing *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011)).  "[I]t [is] the plaintiff's burden to demonstrate that those uncontroverted allegations, without

more, establish the defendant's liability on each asserted cause of action." *Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012) (collecting cases).

Courts then consider whether equitable factors favor the entry of a default judgment. "Court[s] [are] guided by the same factors [that] apply to a motion to set aside entry of a default." *Rodriguez v. Almighty Cleaning, Inc.*, 784 F. Supp. 2d 114, 123 (E.D.N.Y. 2011). Those factors include "(1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is presented." *Enron*, 10 F.3d at 96 (citations omitted).

Finally, if a court determines that entry of a default judgment is legally and equitably appropriate, it determines the amount of damages. Although a party's default "is deemed to constitute a concession of all well[-]pleaded allegations of liability," it "is not considered an admission of damages." *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1993). "The district court [therefore] must . . . conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999) (citation omitted). "If . . . the amount of damages must be ascertained, the court may conduct a hearing or order a reference." *Enron*, 10 F.3d at 95 (citing Fed. R. Civ. P. 55(b)(2)).

"The dispositions of motions for . . . defaults judgments . . . are left to the sound discretion of a district court." *Id.* at 95. But as a rule, "defaults are generally disfavored and are reserved for rare occasions." *Id.* at 96; *cf. New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005) (characterizing a default judgment as "the most severe sanction [that a] court may apply" and explaining that although "[a] motion to vacate a default

4

judgment is addressed to the sound discretion of the district court, . . . [the Second Circuit] ha[s] expressed a strong preference for resolving disputes on the merits" (citations omitted)).

## II.   COPYRIGHT INFRINGEMENT

To succeed on a copyright infringement claim, the plaintiff must prove (1) ownership of a valid copyright and (2) the infringement of that copyright by the copying of an original work.  *See Kwan v. Schlein*, 634 F.3d 224, 229 (2d Cir. 2011).  "A properly plead[ed] copyright infringement claim must allege [1] which specific original works are the subject of the copyright claim, [2] that [the] plaintiff owns the copyrights in those works, [3] that the copyrights have been registered in accordance with the statute, and [4] by what acts during what time the defendant infringed the copyright."  *Kelly v. L.L. Cool J., et al.*, 145 F.R.D. 32, 36 (S.D.N.Y. 1993) (citations omitted).

A certificate of "copyright registration made within five years of first publication of a work constitutes prima facie evidence of the validity of the copyright in any judicial proceeding."  *Gaste v. Kaiserman*, 863 F.2d 1061, 1064 (2d Cir. 1988); *see also Sheldon v. Plot Commerce*, 2016 WL 5107072, at *11 (E.D.N.Y. Aug. 26, 2016).  But the failure to include a certificate of registration does not mean that the plaintiff has failed to prove she has a valid copyright.  *See Parsons v. Bong Mines Entertainment LLC*, 2021 WL 931506, at *6 (E.D.N.Y. Feb. 18, 2021).  "In cases of default, where the allegations in a complaint are accepted as true, the plaintiff's assertion of the existence of a valid copyright, even without producing the certificate, is satisfactory."  *Id.* (citations omitted).

## DISCUSSION

**I.    LIABILITY**

Adlife here has plausibly alleged that it owns the properly-registered copyright in the photographs and that Sander Brothers infringed upon this ownership interest by using the photographs without permission after they were registered.  *See Kwan*, 634 F.3d at 229.

In support of its complaint, Adlife submitted valid registration numbers as well as copies of the United States Copyright Office's online public catalog for the photographs. *See* Docket Items 14-4, 14-5, 14-6, 14-7.  The catalog shows that the beef chuck steak photo was registered on July 12, 2016, Docket Item 14-4 at 2 (registration no. VA 2-009-665); the blueberries photo was registered on March 5, 2017, Docket Item 14-5 at 2, 5 (registration no. VA 2-047-017); the chicken legs photo was registered on January 23, 2017, Docket Item 14-6 at 2, 5 (registration no. VA 2-046-591); and the pork sausage photo was registered on January 30, 2017, Docket Item 14-7 at 2, 7 (registration no. 2-046-789).  Adlife therefore has plausibly pleaded that it owns the registered copyrights to each of the photographs.  *See Parsons*, 2021 WL 931506, at *6; *Kelly*, 145 F.R.D. at 36.

Moreover, Adlife alleges that Sanders Brothers used the photographs in its weekly advertisements after they were registered.  Docket Item 1 at ¶ 9; *see also* Docket Item 14 at 2.  Attached to the complaint as an exhibit are infringement data sheets that include screenshots of the weekly advertisements using the photographs. *See* Docket Item 1-2.  Although Adlife does not specifically allege when Sanders Brothers first used the photographs, it does allege that it discovered advertisements

using the beef chuck steak photo on May 17, 2019, Docket Item 1-2 at 2; using the blueberries photo on May 24, 2019, and May 31, 2019, *id.* at 3-10; using the chicken legs photo on May 10, 2019, and May 17, 2019, *id.* at 11-14; and using the pork sausage photo on March 22, 2019, *id.* at 15.  That is sufficient to establish infringement. *See, e.g., Conan Properties Int'l LLC v. Sanchez*, 2018 WL 3869894, at *4 (E.D.N.Y. Aug. 15, 2018) (finding a general timeframe of infringement sufficient because it would be "impractical" to require plaintiffs to attest to dates likely known only to the defendant) (citation omitted); *Elektra Ent. Gro., Inc. v. Barker*, 551 F. Supp. 2d 234, 239 (S.D.N.Y. 2008) (finding allegations of past and current infringement sufficient even though the complaint omitted the date or time of each instance of infringement).

Accepting the facts in Adlife's complaint as true, then, the Court is satisfied that without first obtaining permission, Sanders Brothers used the photographs in which Adlife had valid copyrights.

## II.   EQUITIES

Adlife does not make specific arguments regarding the equities, but this Court nonetheless finds that the equities favor entry of a default judgment.  Sander Brothers failed to appear or respond despite being served with the complaint, *see* Docket Item 7, as well as the motion for a default judgment, *see* Docket Item 13, and after this Court gave it even one more opportunity to respond, *see* Docket Item 16.  Not awarding a default judgment certainly would prejudice Adlife.  And, at least on the face of the complaint, there appear to be no meritorious defenses to Adlife's claims.  The Court therefore turns to the issue of damages.

III.   **DAMAGES**

   **A. Statutory Damages**

The Copyright Act authorizes statutory damages ranging from $750 to $30,000

for the infringement of a copyrighted work.  17 U.S.C. § 504(c)(1).  "[C]ourts have broad

discretion to set the amount of the award within the statutory limits."  *Philpot v. Music*

*Times LLC*, 2017 WL 9538900, at *6 (S.D.N.Y. Mar. 29, 2017), *report and*

*recommendation adopted*, 2017 WL 1906902 (May 9, 2017).  In determining statutory

damages, courts should consider:

> (1) the infringer's state of mind; (2) the expenses saved, and profits earned,
> by the infringer; (3) the revenue lost by the copyright holder; (4) the
> deterrent effect on the infringer and third parties; (5) the infringer's
> cooperation in providing evidence concerning the value of the infringing
> material; and (6) the conduct and attitude of the parties.

*Bryant v. Media Right Prods., Inc.* 603 F.3d 135, 144 (2d Cir. 2010).

Because Sander Brothers has not appeared in this action, the Court has no way

to evaluate several of these factors.  But precisely because Sander Brothers has not

appeared, the Court assumes that Sander Brothers willfully infringed the copyright and

gained some advertising value in doing so.  *See CJ Prod. LLC v. Your Store Online*

*LLC*, 2012 WL 2856068, at *3 (S.D.N.Y. July 12, 2012), *report and recommendation*

*adopted*, 2012 WL 4714820 (Oct. 3, 2012).

Likewise, Adlife has not submitted evidence of any financial loss resulting from

the infringement.  Instead, Adlife "respectfully decline[d] to submit evidence of [] actual

losses in the form of licensing fee history" and requested $5,000 per image "for

purposes of deterrence."  Docket Item 14 at 4, 7.

This Court recognizes that awarding significant damages will likely deter Sander

Brothers and others from using copyrighted photographs without permission.  But Adlife

"has provided virtually no information to enable the Court to analyze [the above] factors and assess an appropriate damages award, particularly with respect to any expenses saved by [Sander Brothers] or revenue lost by [Adlife]."  *See McGlynn v. Cools, Inc.*, 2020 WL 6561658, at *7 (S.D.N.Y. July 1, 2020).  "Even if, as a consequence of [Sander Brothers's] default, [Adlife] has been unable to ascertain the extent of any profits that [Sander Brothers] may have earned from its infringing use of the [p]hotograph[s], [Adlife] could still have provided the Court with information regarding the licensing fees that [it] typically charged at the relevant time[s] (assuming [it], in fact, licensed [its] work), but [it] chose not to do so."  *Id.*

Adlife's failure to offer evidence of lost revenue therefore suggests *de minimis* losses and factors into the calculus of assessing appropriate damages.  *See, e.g.*, *Hirsch v. Sell it Social, LLC*, 2020 WL 5898816, at *4 (S.D.N.Y. Oct. 5, 2020) (finding losses *de minimis* where plaintiff did not provide an estimated licensing fee); *Farrington*, 2020 WL 7350336, at *6 (finding that failure to present evidence of lost revenue indicated *de minimis* losses and did not support a large award).

Considering all these factors, the Court finds that $2,500—not $5,000—per photograph in statutory damages is reasonable.  "Although other courts have awarded greater amounts, this Court and others in this Circuit have declined to award more than $2,500 [per photograph] under similar circumstances."  *Farrington*, 2020 WL 7350336, at *6 (citations omitted) (collecting cases); *see also Idir v. Calle TV, LLC*, 2020 WL 4016425, at *3 (S.D.N.Y. July 15, 2020) (awarding $2,500 and explaining that "[t]he defendant's apparent willfulness and the need to deter such conduct justifies an award greater than the minimum of $750, but a higher award is not warranted where there is

no evidence of actual losses or additional evidence of willfulness on the part of the defendant"); *Impulsive Music, Inc. v. Bryclear Enters., LLC*, 483 F. Supp. 2d 188, 190-91 (D. Conn. 2007) (awarding $2,500 per violation where the plaintiffs demonstrated willfulness but could not "quantify any actual loss suffered"); *Philpot*, 2017 WL 9538900, at *9-*10 (awarding $5,000 for unauthorized use of two photographs).

Based on that precedent and the facts alleged here, the Court finds that an award of $2,500 per image—$10,000 total—is appropriate. An award well above the $750 minimum is warranted given Sander Brothers's default and its failure to respond to the motion for a default judgment, as well as to deter against future infringement. But absent evidence of actual loss, an award of more than $2,500 per image would be nothing more than a windfall.

### B. Attorney's Fees and Costs

Under the Copyright Act, courts have discretion to award reasonable attorney's fees to successful litigants. *See* 17 U.S.C. § 505. A court should consider case-specific variables in setting a reasonable hourly rate, which in turn should be used to calculate the "presumptively reasonable fee." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty of Albany*, 493 F.3d 110, 111-12 (2d Cir. 2007), *amended on other grounds by* 522 F.3d 182 (2d Cir. 2008). The hourly rates charged in the reviewing court's district are presumptively the rates that the court should use. *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174-75 (2d Cir. 2009). Therefore, this Court considers the prevailing rate in the Western District of New York in determining a reasonable fee here. *See Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984) (considering the market rate for "similar services by lawyers of reasonably comparable skill, experience, and reputation").

Adlife seeks $378 in attorney's fees and $440 in costs.  Docket Item 14 at 8.
Adlife's attorney submits that his rate in this district is $180 per hour and that he spent
2.1 hours on this matter.[2]  *Id.* at 8-9.  That is indeed quite reasonable.  *See, e.g.,*
*Farrington*, 2020 WL 7350336, at *7 (awarding $288 in attorney's fees and $440 in
costs in similar circumstances); *Mantel*, 2019 WL 5257571, at *4 (finding $180 per hour
reasonable when compared to similar cases in the district).  The Court therefore awards
the requested $378 in attorney's fees and $440 in costs under 17 U.S.C. § 505.

### ORDER

In light of the above, IT IS HEREBY

ORDERED that Adlife's motion for a default judgment, Docket Item 13, is granted
in part; and it is further

ORDERED that Adlife is awarded $10,000 in statutory damages; and it is further

ORDERED that Adlife is awarded $378 in attorney's fees and $440 costs; and it
is further

ORDERED that the Clerk of the Court shall enter judgment against the defendant
in the amount of $10,818; and it is further

ORDERED that the Clerk of the Court shall close this case.

---

[2] Adlife's initial attorney, Richard Paul Liebowitz, was suspended from practice in
this district on December 21, 2020.  *See* W.D.N.Y. Order, Dec. 21, 2020 (Geraci, C.J.).
Since December 3, 2020, Adlife has been represented by attorney Joel B. Rothman.
Docket Item 17.  "[A]n attorney may recover legal fees for services rendered prior to
suspension . . . so long as the misconduct involved does not relate to the representation
for which the fees are sought."  *Vitalone v. City of New York*, 395 F. Supp. 3d 316, 324
(S.D.N.Y. 2019) (internal quotations omitted).  The conduct resulting in Liebowitz's
suspension is unrelated to this matter, so an award of attorney's fees still is appropriate.

SO ORDERED.

Dated:   April 21, 2021
         Buffalo, New York

_____
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE